NORTHCUTT, Judge.
The trial of Mr. and Mrs. Orsfs breach of contract action ended when the trial court entered a directed verdict in favor of the defendant, All American Termite & Pest Control, after the Orsis rested their ease. The Orsis contend the trial court erred in its conclusion that they failed to prove the damages they sustained during the contract period. We agree with them, and reverse and remand for a new trial. Because of our resolution of the issue on appeal, we need not address All American’s issue on cross-appeal, which challenged the trial court’s denial of its request for attorney’s fees.
In April 1992 the Orsis contracted for All American to treat their home for a subterranean termite infestation. The agreement also provided that All American would pay for repairs if “new subterranean termite damage” occurred while the agreement was in effect. The contract defined the quoted term as “damage done by subterranean termites over and above the damage existing at the time this agreement was originally entered into.” The contract also contained two limitation of liability provisions:
2. [All American’s] liability for payment of repairs does not include any hidden or inaccessible damage unless live termites are found indicating the damage could have occurred since the treatment date.
3. Where live termites are found [All American’s] liability is limited to that portion of the damage that could have occurred since the treatment date of the contract.
The contract stated that termites existed at the property when the parties entered into it. It referred to an attached chart that had been prepared by All American’s representative, indicating the areas of infestation and the areas where prior termite damage had occurred. All American treated the home for subterranean termites. Between the date of treatment and May 1994, it inspected the home four times, but found no evidence of a termite infestation. In May 1994 the Orsis discovered live subterranean termites in their kitchen. All American retreated the property several times, but the infestation continued unabated. The Orsis canceled their contract in January 1995.
The parties disagreed about what repairs All-American should make to the property under the terms of the contract. The two sides were unsuccessful in resolving the dispute, and the Orsis filed suit. After they presented their evidence at trial, All American moved for a directed verdict, arguing that the Orsis had failed to prove what damages had occurred during the contract period. The trial court found that the Orsis had not presented evidence from which the jury could determine whether the damages the Orsis alleged had occurred while the contract was in force. It therefore granted All American’s motion.
When an appellate court reviews a trial court’s grant of a directed verdict, it must view the evidence and all inferences of fact in a light most favorable to the nonmov-ing party. See State, Dept. of Transp. v. Young, 539 So.2d 596, 597 (Fla. 2d DCA 1989); Reams v. Vaughn, 435 So.2d 879, 880 (Fla. 5th DCA 1983). We can affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party. Young.
We first examine the Orsis’ evidence regarding the condition of their home when the parties entered into the contract. They introduced the chart that All American attached to the contract. It showed evidence of termite damage on the west (front) wall of the home, on the western end of the north (side) wall and around a door frame on the south (side) wall of the house. The chart noted that the damage around the door frame on the south wall had been repaired. The chart also showed possible hidden damage on the eastern end of the north wall. Neither damage nor a termite infestation was indicated on the east (back) wall of the home.
Additionally, Mr. Orsi testified that around the time they entered into the contract with All-American, he tore out the entire front wall of the home and repaired and replaced *427 it, even though only the northern half of that wall had been damaged. He also testified that the most severe damage was to the western portion of the north wall, and that he had repaired it. Mr. Orsi removed the damaged two-by-fours, put in new ones, and also put in new insulation and siding. He also said that he had repaired the damaged door frame on the south wall.
Next, we examine the evidence about what termite damage existed at the residence before the Orsis canceled the contract. They introduced proposals to repair damage to the house from four different contractors. The Orsis had hired two of the contractors, and their proposals were dated June 1994. The other two contractors’ estimates were obtained by All-American in August 1994. Each of these proposals explained where the house was damaged, and what would be necessary to repair it. Each of the proposals stated that the damage was caused by termites. The Orsis also presented testimony from an engineer who inspected the Orsis’ home in June 1994 and saw live termite colonies in a bedroom at the back of the house and in the kitchen, which also was located at the back of the house. He also described damage in the home that he attributed to termites. Another contractor testified that when he visited the home in June 1994 he saw live termites in the kitchen and an adjacent bathroom, and he described the damage he saw. Additionally, the Orsis introduced letters from a representative of All American admitting responsibility for certain repairs, and setting out the areas of the home that it agreed to fix.
When viewed in the light most favorable to the Orsis, we reach the clear conclusion that they presented sufficient evidence of All American’s liability for “new subterranean termite damage” as defined in the contract. Based on Mr. Orsi’s testimony, the jurors could have believed that all the previous damage to the home had been repaired at the time All American began treating the property in 1992. Even if the jury had chosen not to believe Mr. Orsi, All American’s own chart showed the areas that it believed were or might have been damaged at that time. All American inspected the property for a two year period, and found no termites. Abundant evidence demonstrated a live termite infestation in 1994, the damage to the house, and where in the home the infestation and damage occurred. The jury easily could have compared Mr. Orsi’s testimony and the chart from 1992 to the proposals for repair made in 1994, and determined what damage, if any, occurred during the time the contract was in force.
The trial court erred in granting a directed verdict at the end of the Orsis’ case. We reverse and remand for a new trial.
PATTERSON, A.C.J., and WHATLEY, J., concur.